IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CHARLES DAVID CLARK                                                             PLAINTIFF

v.                                    NO. 5:11CV00230 HDY

MICHAEL J. ASTRUE,                                                              DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

BACKGROUND. Plaintiff Charles David Clark ("Clark") commenced the administrative portion of this case in September of 2009 by filing an application for disability insurance benefits pursuant to the provisions of the Social Security Act ("Act"). His application was denied initially and upon reconsideration, after which he requested, and received, a de novo hearing before an Administrative Law Judge ("ALJ"). The ALJ issued a decision adverse to Clark in December of 2010, and he appealed. The Appeals Council denied his request for review, thereby causing the ALJ's decision to become the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Clark then commenced the judicial portion of this case in September of 2011 by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. It requires the Court to consider the weight of the evidence in the record and apply a balancing test to evidence which is contrary. See Heino v. Astrue, 578 F.3d 873 (8th Cir. 2009).

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, he found that Clark has not engaged in substantial gainful activity since October 15, 2008, the alleged onset date. At step two, the ALJ found that Clark has the following severe impairments: left shoulder and arm pain and coronary heart disease. At step three, the ALJ found that Clark does not have an impairment or combination of impairments listed in, or equal to one listed in, the governing regulations. The ALJ then assessed Clark's residual functional capacity and found it to be as follows: "… [Clark] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except [he] can occasionally bend, crouch, stoop, balance, crawl, or kneel; [he] can occasionally reach overhead with the left (dominant) upper extremity." See Transcript at 13. At step four, the ALJ found that Clark is unable to perform his past relevant work as a log loader and skid operator. At step five, the ALJ found that considering Clark's residual functional capacity, age, education, and work experience in conjunction with the testimony of a vocational expert, jobs exist in significant numbers that he can perform. Accordingly, the ALJ concluded that Clark has not been under a disability as defined by the Act from the alleged onset date through the date of the ALJ's decision.

<u>CLARK'S ASSERTIONS OF ERROR</u>. Are the ALJ's findings supported by substantial evidence on the record as a whole? Clark thinks not and advances the following two reasons why: 1) his residual functional capacity was not properly assessed, and 2) the ALJ erred at step five.

<u>CLARK'S RESIDUAL FUNCTIONAL CAPACITY</u>. Clark first maintains that his residual functional capacity was not proper assessed. He so maintains for two reasons. First, he maintains that the combined affect of his impairments was not considered. Second, he maintains that his subjective complaints were not properly evaluated.

Residual functional capacity is simply an assessment of "the most [the claimant] can do despite [his] limitations." <u>See</u> <u>Brown v. Barnhart</u>, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses the claimant's ability to function in the workplace." <u>See</u> <u>Id</u>. at 539. In making the assessment, the ALJ is obligated to consider all of the claimant's impairments, including the ones that are not severe. <u>See</u> 20 C.F.R. 404.1545(e). The ALJ is also obligated to consider the claimant's subjective complaints and do so in accordance with <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir.1984).[1]

The ALJ found that Clark has the residual functional capacity to perform light

---

[1] In addition to the objective medical evidence, <u>Polaski v. Heckler</u> requires the ALJ to consider the claimant's daily activities; the duration, frequency and intensity of his pain; the dosage and effectiveness of any medication; precipitating and aggravating factors; and functional restrictions. The ALJ need not explicitly discuss each factor but "only need acknowledge and consider those factors before discounting a claimant's subjective complaints." <u>See</u> <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 590 (8th Cir. 2004).

work, except that he can only occasionally bend, crouch, stoop, balance, crawl, or kneel and can only occasionally reach overhead with his left arm. See Transcript at 13. In so finding, the ALJ specifically acknowledged his obligation to consider all of Clark's impairments, including the ones that are not severe. See Transcript at 11. The ALJ also found the following with regard to Clark's subjective complaints of pain:

> [Clark] makes the following allegations regarding the intensity, persistence, and limiting effects of his symptoms. [He] alleges that he has had a heart attack with a stent placement, as well as pain down his left shoulder and arm. [He] indicates that he has pain when he reaches overhead or with physical exertion lasting more than twenty minutes. [He] takes Atenolol and low dose Aspirin for his conditions and does not report any significant side effects. [Clark] lives by himself and receives financial support from family. [He] admits that he can care for himself and that he generally watches television or sits on his porch. [He] further admitted that he can lift up to twenty pounds. [He] has completed the tenth grade. …
>
> Turning to the medical evidence, the objective findings in this case fail to provide strong support for [Clark's] allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those reported above. Shabbir Dharamsey, M.D., a Consultative Examiner, found that [Clark] had a myocardial infarction in 2006, with a coronary stent placement that same year. Treatment notes also indicate that [Clark] suffered an injury to his left shoulder and arm in 2007. These diagnoses support the residual functional capacity in that [his] pain precludes him from performing more than light work, while his shoulder injury prevents constant overhead work with his left arm. …
>
> … the [ALJ] finds that [Clark's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
> [Clark's] work history, inconsistencies in the record, and objective medical evidence belie his allegations of disabling impairments. While [he] has a

good work history, which generally supports his case, the record indicates that [he] worked for two years after his stent placement. The fact that the impairment did not prevent [him] from working at that time strongly suggests that it would not currently prevent work. [Clark] testified that he had not driven in seven to eight years because he did not have a driver's license, however, his function report indicates that he drives a car when he goes out. At the Consultative Examine, he stated that his chest hurt after raking leaves for thirty minutes, which also conflicts with his function report where he indicated that he did not do any outside housework. Such inconsistencies regarding issues material to the disability determination do not add to [his] overall credibility. Furthermore, [he] has earned unemployment benefits through 2009 and 2010. It is appropriate to question a disability claimant concerning the patent inconsistencies between [his] filing of a successful claim for unemployment benefits, which requires [him] to attest to being able to work, and [his] filing of a disability claim, which requires an attestation to being unable to work. [Citation omitted]. In addition, [Clark] looked for work throughout 2009, which is also inconsistent with allegations of disabling symptoms. [His] objective medical evidence also indicates that [he] does not take any pain medication, which is inconsistent with complaints of disabling pain. While [he] does take medication for blood pressure and cholesterol, the regimen of medication taken by [him] is not consistent with a disabling condition. Nevertheless, the [ALJ] finds that [he] is at least partially credible, as reflected through the limitations in the residual functional capacity. ...

As for the opinion evidence, Jerry Mann, M.D., a Medical Consultant, opined that [Clark] could perform medium work. The [ALJ] gives this opinion little weight as it did not give enough consideration to [Clark's] subjective allegations. Although a cardiac assessment was filled out, Dr. Dharamsey did not sign it. Nevertheless, the form is consistent with the above residual functional capacity. ...

In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. ... [Clark] does experience some levels of pain and limitations but only to the extent described in the residual functional capacity above.

See Transcript at 14-15.

Substantial evidence on the record as a whole supports the ALJ's assessment of

Clark's residual functional capacity. The ALJ properly considered the medical evidence and the opinions of the medical professionals, which establish that Clark experiences left shoulder and arm pain, see Transcript at 33-35, 172-179, and coronary heart disease which necessitated the placement of a stent in December of 2006, see Transcript at 28, 34, 166-167. The ALJ incorporated the restrictions imposed by those impairments into his assessment of Clark's residual functional capacity as the ALJ found that Clark can only occasionally bend, crouch, stoop, balance, crawl, or kneel and can only occasionally reach overhead with his left arm. The evidence also indicates that he experiences hypertension and high cholesterol, see Transcript at 166-167, elevated liver enzymes, see Transcript at 170-171, and some chest pain and shortness of breath, see Transcript at 36, 198-199.[2] The ALJ incorporated Clark's chest pain and shortness of breath into the assessment of his residual functional capacity as the ALJ found that Clark is limited to less than the full range of light work. The ALJ did not incorporate the restrictions imposed by the other impairments into the assessment, and he did not err as the impairments do not give rise to any restrictions. Clark testified that he also "chipped [his] tail bone" in a motor vehicle accident. See Transcript at 37. The ALJ did not incorporate the restriction imposed by that injury into his assessment of Clark's residual functional capacity, and the ALJ did not err as there is no evidence of such an injury.

Dr. Lee Davis ("Davis") saw Clark for a follow-up examination after his stent

---

[2] There have been times, though, when Clark has denied any chest pain and shortness of breath. See Transcript at 166.

placement. See Transcript at 166-168. Davis noted Clark's history of a myocardial infarction but otherwise only noted Clark's problems associated with hypertension and high cholesterol. Davis noted that Clark denied any significant cardiovascular or respiratory problems and denied any musculoskeletal pain. It is also worth noting that he reported no chest pain or shortness of breath at that time.

Clark presented to the Ouachita County Medical Center Emergency Room in October of 2007 following a motor vehicle accident. See Transcript at 172-179. The notes from his visit reflect that he injured his left shoulder and arm in the accident, but his neurological and muscular systems were within normal limits.

Clark was seen for a period of time by physicians at the Bearden Community Health Center. See Transcript at 180-189. Dr. Robert A. Floss ("Floss"), for instance, saw Clark in December of 2008. Floss noted Clark's history of "hypercholesterolemia/acute [myocardial infarction]" but otherwise only noted the following: "stable cardiovascular." See Transcript at 180. A physician's assistant saw Clark in July of 2009. The physician's assistant's findings are unremarkable, although he did recommend that Clark engage in "regular exercise." See Transcript at 182.

Dr. James Wells ("Wells") performed an assessment of Clark's cardiac condition and found he experiences chest pain caused by certain movements. See Transcript at 190-192. Although not specifically mentioned by the ALJ, there is nothing about Wells' assessment inconsistent with the finding that Clark can perform light work.

Dr. Jerry Mann, M.D., ("Mann") performed an assessment of Clark's physical

residual functional capacity and opined that Clark is capable of performing medium work. See Transcript at 203-210. The ALJ could and did discount the opinion, though, because he found Mann failed to give proper weight to Clark's subjective allegations.

Dr. Shabbir Dharamsey, M.D., ("Dharamsey") performed an assessment of Clark's cardiac condition and found he experiences chest pain, "which is atypical for angina," and shortness of breath "with minimal exertion." See Transcript at 198.[3] Dharamsey's impressions included the following:

> Old MI
>
> Status Post Coronary Stent
>
> Chest Pain c/o stinging chest pain which radiates to [left] shoulder and arm. Example of raking leaves for 30 minutes causes chest, arm and shoulder pain of stinging quality. Deep breathing, eating, or palpitation of chest doesn't recreate the pain. Movements of [left] arm can cause the pain in the chest, shoulder and arm to occur. [Clark] feels this pain began after an accident where there was an impact to the [left] side of [his] car. Rest improves chest pain after 30 minutes.
>
> Shortness of breath - occurs with ambulation of appx 20-25 yards.

See Transcript at 199. The ALJ properly incorporated Dharamsey's impressions into the assessment of Clark's residual functional capacity as the ALJ found that Clark is limited to less than the full range of light work.

The ALJ properly considered the non-medical evidence, including Clark's

---

[3] Dharamsey did not actually sign the assessment; it was instead signed by another individual. See Transcript at 199.

subjective complaints, and did so in accordance with Polaski v. Heckler. As to Clark's daily activities, the record supports the ALJ's finding that Clark lives by himself and has limited activities. See Transcript at 29, 37-38, 136-141. Although he alleged almost a complete inability to attend to his own needs, the ALJ could question the veracity of such an assertion, particularly given some of Clark's inconsistent representations.[4]

As to the duration, frequency, and intensity of Clark's pain, and the functional restrictions it causes, the record supports the ALJ's finding that Clark experiences pain whenever he reaches overhead or engages in physical exertion lasting more than twenty minutes. See Transcript at 34-35, 134-135, 200-201. The ALJ properly incorporated those restrictions into the assessment of Clark's residual functional capacity.

As to Clark's medication, the record supports the ALJ's finding that Clark takes very little pain medication. Aside from medication for hypertension and high cholesterol, he only takes low dosages of aspirin. See Transcript at 31-32, 35, 135. Although he maintains that he cannot afford appropriate medication, something more than his bare statement of financial hardship is required in order for the ALJ to take the hardship into consideration. See Carrigan v. Astrue, 2009 WL 734116 (W.D.Ark. 2009) (Bryant, J.).

As to other factors, the record supports the ALJ's finding that although Clark has a good work history, see Transcript at 106-113, he worked for well over a year after his

---

[4] For instance, Clark testified that he allowed his driver's license to expire roughly eighteen years ago and he has not driven an automobile in seven or eight years. See Transcript at 32. In a disability form, though, he represented that he still drives. See Transcript at 139. Clark also testified that he can lift "nothing way over five, ten pounds" with his left hand. See Transcript at 35. In a disability form, though, he represented that he can lift "nothing over [fifty] pounds. See Transcript at 141.

stent placement, see Transcript at 27-29, 34. The record also supports the ALJ's findings that Clark looked for work throughout 2009 and earned unemployment benefits throughout 2009 and 2010. See Transcript at 27. The ALJ could and did find that those factors undermined Clark's credibility.

For the foregoing reasons, substantial evidence on the record as a whole supports the ALJ's assessment of Clark's residual functional capacity. The ALJ properly considered all of the evidence and Clark has not shown that the ALJ failed to consider the combined effect of his impairments. The Court is also satisfied that the ALJ properly evaluated Clark's subjective complaints.

STEP FIVE. Clark also maintains that the ALJ erred at step five. Specifically, Clark maintains the following: 1) the ALJ found that Clark has past relevant work that included work as a cashier; 2) the ALJ found that Clark cannot return to any of his past relevant work; 3) when asked whether there are jobs that a hypothetical individual with Clark's residual functional capacity, age, education, and work experience can perform, the vocational expert answered that there is; 4) the vocational expert identified the job as a cashier and noted that the job is an unskilled position requiring a high school education; and 5) the ALJ credited the vocational expert's testimony and found that a job exists that Clark can perform, the very job the ALJ found that Clark cannot perform and one for which he allegedly does not have sufficient education to perform.

Clark's assertion has no merit for two reasons. First, the ALJ found that Clark has past relevant work as a log loader and skid operator only. See Transcript at 15. The ALJ

did not find that Clark has past relevant work that included work as a cashier.[5] Second, Clark possessed a tenth grade education, or an educational level defined by the Act as "limited." See Transcript at 24. Thus, he had some high school education and possessed the education required of a cashier.

Clark also appears to maintain that the hypothetical question was defective because it contained a deficient assessment of his residual functional capacity, namely, the question failed to encompass the lifting and sitting limitations he experienced. "'[T]estimony from a vocational expert is substantial evidence [on the record as a whole] only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.'" See McKinley v. Apfel, 228 F.3d 860, 865 (8th Cir. 2000) [quoting Taylor v. Chater, 118 F.3d 1274, 1278 (8th Cir. 1997)]. His assertion has no merit. The question was correctly phrased in that it captured the concrete consequences of his deficiencies.

CONCLUSION. There is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Clark's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED ___23___ day of February, 2012.

---

[5] Although Clark testified that he had worked at a convenience store stocking the coolers, he did not "run no cash registers or nothing like that." See Transcript at 25. In addition, he testified that the work was not full-time. See Transcript at 25.

_____
UNITED STATES MAGISTRATE JUDGE